BEA, Circuit Judge,
dissenting:
I agree with the majority that the ALJ did not err in assigning “little weight” to Dr. Syal’s opinion. Unlike the majority, however, I would hold that the ALJ did not err in finding that Notali’s testimony about her symptoms was not credible.
In weighing a claimant’s credibility, the ALJ may consider many factors, including “(1) ordinary techniques of credibility evaluation, such as the claimant’s reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant’s daily activities.” Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). In evaluating the credibility of the symptom testimony, the ALJ also considers “the claimant’s work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant’s symptom, precipitating and aggravating factors; [and] functional restrictions caused by the symptoms.” Id. While an ALJ may not reject a claimant’s statements about the intensity and persistence of her symptoms solely because they are not substantiated by the objective medical evidence, 20 C.F.R. § 404.1529(c)(2), the ALJ must consider whether there are any inconsistencies between the claimant’s statements and the medical evidence when determining the extent to which symptoms affect a claim *627 ant’s capacity to perform basic work activities, see 20 C.F.R. § 404.1529(c)(4).
Here, the ALJ determined that the “objective medical evidence of record d[id] not support the severity” of Notali’s subjective complaints. The ALJ detailed numerous medical tests and evaluations that he considered to be inconsistent with Notali’s allegedly disabling limitations. These tests showed mild to moderate degenerative disc disease and no obvious nerve root compression. For instance, a 2010 MRI of the lumbar spine showed “mild to moderate spondylosis and disc bulges producing mild inferior foraminal narrowing, primarily on [the] left side.”
The ALJ also discussed an independent consultative physical .examination by Dr. Brian Briggs. “Dr. Briggs noted there were no objective findings to support the claimant’s subjective complaints, and gave no limitations.” For instance, “[t]he back was normal, with negative spinal palpation, no tenderness or deformity, and normal range of motion of the cervical, thoracic, and lumbar spine.” The ALJ concluded that “Dr. Briggs’ results on consultative examination were consistent with the medical evidence of record, and supportive of the opinions and conclusions of the State agency medical consultant.”
Moreover, the ALJ considered several reports that Notali’s symptoms improved with treatment. He noted that Notali “had good results for her complaints of neck and low back pain with several trials of physical therapy.” In support of this observation, the ALJ cited medical records from Apex Physical Therapy, which stated that Notali had improved range of motion, strength, and reduced pain in her cervical spine, as well as improved function and range of motion in her lumbar spine, after undergoing physical therapy.
The ALJ also considered reports of No-tali’s daily activities. See 20 C.F.R. § 404.1529(c)(3)(i). The ALJ noted that her reported daily activities—shopping, cooking, attending church, visiting family and friends, driving her daughter to school and to the park, and performing household chores with assistance—demonstrated more than a minimal level of functioning.
I would thus hold that the ALJ did not err in finding that Notali’s testimony about her symptoms was not credible. I therefore respectfully dissent.